Defendant was indicted in the parish of Livingston for having feloniously killed Lena White, who was his wife. He was tried and found guilty. The jury, in returning their verdict, recommended that the sentence to be imposed be suspended, but the trial judge thought that this should not be done, and sentenced defendant to serve at hard labor for a period of not less than five nor more than seven years, and imposed upon him a fine of $1. From this sentence defendant has appealed.
Defendant relies on five bills of exceptions to obtain a reversal. Three of these relate to refusals to grant a continuance, or time, to enable his counsel to prepare himself to conduct the defense; one to the overruling of an objection to the admissibility of certain evidence, and the last to the refusal to grant a new trial.
It appears that the accused was indicted on February 4, 1926, arraigned on March 1st, and brought to trial on June 9th, of the same year. At the time of his arraignment the court offered to appoint counsel for him, but he declined the offer, saying that he would defend himself. The court repeated this offer before the case was called for trial, but defendant again refused the offer. On June 9, 1926, the case was called for trial, and, after ten jurors had been impaneled, defendant, or his relatives and friends, during *Page 388 
an intermission in the trial, while the sheriff was out summoning tales jurors, employed counsel to conduct the defense.
The counsel employed immediately filed a motion for a continuance, in which he alleged that he had been employed in the case only three hours before the motion was filed, and had not had time in which to consult the witnesses and otherwise prepare to defend his client; that ten Jurors had been selected in the case by defendant, acting without counsel; that the case was unusual, as defendant was charged with the killing of his own wife; that the case involved defendant's religious belief; and that counsel was not sufficiently familiar with the doctrines of defendant to cross-examine the witnesses or present the defense. This motion was overruled, and the bill reserved to the ruling constitutes defendant's first bill of exceptions.
On the afternoon of the same day on which the selection of the jury had commenced, a sufficient number of the tales jurors summoned appeared in court to enable the judge to proceed with the case. When the impaneling of the jury was ordered resumed, counsel again urged his previous motion for a continuance, and also urged that he had been engaged in the trial of another case which was called after ten of the jurors had been impaneled in this case; that, should the court refuse to grant a continuance, then that the court, before proceeding further, should adjourn until the next morning, to enable counsel to intelligently examine into the facts, during which time he would do his best to be in position to proceed. The court again refused to grant the continuance, and also refused to adjourn until the next morning. The bill taken to this ruling constitutes defendant's second bill of exceptions.
For the purpose of showing the difficulties in which counsel for defendant found himself, it is necessary to outline briefly the *Page 389 
contentions of the prosecution and of the defense. It was the contention of the prosecution that defendant was guilty of manslaughter, because he failed and refused to provide his wife with medical assistance in an illness, due to infection, following childbirth, as a result of which failure, refusal, and willful breach of duty she died. On the other hand, it was defendant's contention that he and his wife were members of the Holiness Church, or Church of God, by the doctrines of which its members are permitted to call in a physician only in cases of childbirth, the church teaching that, in other instances, one should look to God for a cure with the aid of prayer alone; that his wife was about to be confined; that he employed a physician to attend her in childbirth; that the physician attended her during that period, and for several days thereafter; that on the occasion of the third visit his wife had a chill and fever, which the physician attributed to cold or malaria; that, such being the diagnosis, the services of a physician were dispensed with; that, when defendant's wife grew worse, the saints and elders of the church were called in to offer prayer for her recovery; that the course pursued was in accordance with his theories and those of his wife, and with their conception of the proper thing to be done, neither believing in the efficacy of medicine; and that, had his wife wished the services of a physician, notwithstanding his views, he would have obtained one for her. Evidence along these lines was offered by both the state and the defense.
As relates to the refusal of the court to grant a continuance, in the true sense of the term, that is, by postponing the case indefinitely or to some fixed date, we find no error. Defendant had from at least March 31, 1926, until June 9, 1926, to make such preparation as he was able to make; to employ counsel, or request the court to appoint *Page 390 
counsel for him. He at no time, however, asked that counsel be appointed, and, though the court twice offered to appoint a member of the bar to defend him, defendant each time refused the offer. An accused has the right, if he deems proper, to defend himself without the aid of counsel, and the trial is none the less valid. See State v. Charles, 130 La. 683, 58 So. 509. In fact, it may be said that the court is without right to interfere with the defense of an accused by forcing counsel upon him. If an accused delays asking the court to appoint counsel for him, or if he delays to employ counsel, until after the impaneling of the Jury has begun, he has no right to expect a continuance and the consequent discharge of the jurors impaneled, in order to enable his counsel to prepare to defend him. We therefore find that there was no error in refusing the continuance.
We, however, feel that our brother should have granted the request of counsel to adjourn court until the next morning to enable him to make preparation to defend the case. The adjournment would have made safer the course of justice. It would not have required the discharge of the jurors impaneled. At most, the court would have lost only two or three hours' time. The defense that counsel was called upon to make was an unusual one. So far as our knowledge extends, there is no case like it in our jurisprudence. The case involved the questions, among others, whether, when a wife does not believe in the efficacy of medicine, but alone in that of prayer and the ministrations of her church for recovery from human ailments, however serious those ailments may be, must the husband nevertheless provide her with a physician and medicine, if it be within his power to do so, or if, notwithstanding her belief, she would have been willing to accept the services of a physician, had her husband so advised her, *Page 391 
was he called upon to thus advise, notwithstanding it would have been contrary to his own belief to have done so, and whether, if the evidence seemed to indicate that the husband advised his wife not to accept the services of a physician, but to rely upon prayer and the ministrations of the church for recovery, he had a right, in good faith, to so advise her, without subjecting himself to punishment for manslaughter, in the event of her death, if she acted upon his advice, and he, accordingly, did not provide a physician.
It is true that defendant might have employed an attorney earlier to examine into these questions and into the knowledge of the witnesses concerning the facts, and to prepare such special charges as he might find necessary to request the court to give to the jury, or, if he were unable to employ counsel earlier, he might have requested the court to appoint counsel for him. However, should he, for that reason, have been denied a few hours' time to enable his counsel to make some preparation? We do not so conclude. In State v. Deschamps, 41 La. Ann. 1051, 7 So. 133, the accused on the day his case was fixed for trial, when brought to the bar therefor, notified the court that he was without counsel, whereupon counsel was appointed to defend him, and a continuance granted for not quite two days to enable his counsel to prepare for trial. At the expiration of the time granted, the case was again called for trial, when counsel for the accused filed a motion for a continuance on the ground that he had not had sufficient time to prepare for trial. The court refused the continuance on the ground that counsel had been granted sufficient time, but this court on appeal, without even commenting on the fact that the accused had not notified the court that he was without counsel until his case was called for trial, held that the continuance should have been granted, *Page 392 
and annulled the verdict and the sentence. It is true that that was a capital case, and this case is not, but the charge herein is serious, the defense unusual, and the time which we think should have been granted did not call for a continuance, but merely for the adjournment of court some two or three hours earlier than usual.
We find no reversible error in the remaining bills, though the evidence referred to in bill No. 3, relative to the telephone message, was, strictly speaking, irrelevant, but no possible injury could have resulted to defendant because of its admission. The bill, taken to the overruling of the motion for a new trial, presents nothing that we can review, save that which we have already reviewed.
For these reasons the verdict and the sentence appealed from are annulled and set aside, and this case is remanded to be proceeded with according to law.