Larry RUTLEDGE *v.* STATE of Arkansas

CR 78-12                                        567 S.W. 2d 283

Opinion delivered June 26, 1978
(In Banc)

S. *Wooten Epes* and *Charles P. Allen,* for appellant.

*Bill Clinton,* Atty. Gen., by: *James E. Smedley,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Larry Rutledge was convicted of burglary and theft of property in the Phillips County Circuit Court and sentenced to serve five years in the Arkansas Department of Correction. He raises two issues on appeal: that the trial court erred in denying a motion to suppress his confession and the evidence obtained as a result of that confession; that the trial court erred by not crediting him for time he had spent in jail awaiting trial. We find no merit to either issue, and affirm the conviction and sentence.

The first issue involves a unique fact situation. Rutledge argues he had a lawyer on two unrelated pending felony charges when he confessed to these crimes and his statement was not voluntary because his lawyer was not contacted.

Rutledge had been arrested on the two previous felony charges, but had been released on bond pending the trial. While on bond, he was arrested by the Marvell police for driving an automobile while intoxicated and placed in jail. He escaped from jail, but was arrested shortly afterwards by deputies from the Phillips County Sheriff's Department.

The deputies questioned Rutledge for a few moments about the escape, and then began questioning him about a burglary of the Marvell Lumber Company. Rutledge had signed a waiver of rights form prior to questioning. He ad-

mitted that he had committed the burglary and stolen some guns.

This statement, which had been tape-recorded, was later reduced to writing. However, Rutledge refused to sign the statement on advice of counsel. Rutledge's attorney, on the two prior felonies, contacted him after this confession and advised him not to sign the statement.

Appellant first claims that the statement was not voluntary because he was threatened and beaten. His testimony on this point was in direct conflict with that of the deputy sheriffs who interrogated him.

Rutledge also argues that because he was represented by counsel on the two other felony charges, the deputy sheriffs were under an obligation to contact his attorney before questioning him about the burglary and theft.

The trial court, after examining its docket, made the statement that at the time Rutledge was questioned he did not have counsel of record. It is not clear from the record before us whether Rutledge had counsel of record on the two unrelated pending felony charges or not. The deputy sheriffs testified that they thought he was represented by a lawyer. Rutledge testified that he did not know whether he had a lawyer. (Apparently he was aware that his lawyer was withdrawing or had withdrawn from the case). In any event, we will assume that he did have counsel of record on the two unrelated felony charges.

Rutledge also argues that once a defendant is represented by counsel he cannot waive his constitutional rights without the knowledge and permission of his attorney. He cites the case of *United States* v. *Howard*, 426 F. Supp. 1067 (W.D.N.Y. 1977), as authority for this proposition. In the *Howard* case the authorities continued to question the suspect after his attorney had told them he represented Howard and did not want the suspect interrogated. We feel the court correctly held that such an interrogation was a violation of the suspect's constitutional rights. However, in this case the facts are entirely different.

In this case a waiver of rights form was signed by Rutledge before questioning began. He admitted that he signed it. He did not testify on direct examination that he had requested counsel. However, during cross examination he said that he had asked for a lawyer.

The state has the burden of proving that an in-custodial statement is voluntary. *Harris* v. *State,* 244 Ark. 314, 425 S.W. 2d 293 (1968). It is the duty of the trial court, after listening to the evidence, to determine whether a statement is voluntary according to law. The trial court in this case found that the statement was voluntary and after examining the totality of the circumstances, we cannot say that finding is clearly against the preponderance of the evidence. *Loomis* v. *State,* 261 Ark. 803, 551 S.W. 2d 546 (1977).

We do not find it was *per se* improper in this case for the authorities to question Rutledge about the burglary of the Marvel Lumber Company even though Rutledge may have had an attorney of record on another set of pending charges against him and that attorney was not notified of the interrogation or Rutledge specifically told he had a right to call that lawyer. *Michigan* v. *Mosley,* 423 U.S. 96 (1975). If he is represented by counsel on other charges, it becomes a question of whether the accused knowingly and intelligently entered into a voluntary waiver of his rights to counsel and against self-incrimination. See *Rodgers* v. *State,* 261 Ark. 293, 547 S.W. 2d 419 (1977).

The trial court ruled that Rutledge voluntarily made the statement. Since we agree with the trial court, it is unnecessary to determine whether evidence received as a result of Rutledge's confession should have been suppressed as "fruit of the poisonous tree."

Rutledge's request for credit for the time he spent in jail awaiting trial is also without merit. The request was not raised in the trial court although Rutledge had the opportunity to raise it before sentencing. This issue cannot, then, be raised the first time on appeal. See *Coleman* v. *State,* 257 Ark. 538, 518 S.W. 2d 487 (1974).

Affirmed.

HOLT and HOWARD, JJ., dissent.

GEORGE HOWARD, JR., Justice, dissenting. I am compelled to dissent in this case inasmuch as it is my belief that from a totality of the circumstances involved, the trial court committed reversible error in failing to suppress the alleged confession made by appellant. *See: Degler* v. *State,* 257 Ark. 388, 517 S.W. 2d 515 (1974) where we stated that we wlll make an independent determination of the voluntariness of a confession by reviewing the totality of the circumstances.

The record reflects that appellant was taken into custody by the police on January 31, 1977, at approximately 11:22 p.m. At the time, the appellant had two felony charges pending against him in the Phillips County Circuit Court and was represented by court appointed counsel. The police officers involved were aware that appellant had an attorney.

Appellant was immediately taken to the Phillips County jail where appellant purportedly executed a waiver of rights form, and purportedly confessed to burglary and theft of property. Appellant contends that the oral statement was given, which was later reduced to writing, but not signed by appellant, after he was required by police officers to remove his shirt, threatened to be taken "to the river", and beaten about the head, face, back and legs.

Although the record is void of appellant's educational background and his age, it is readily apparent that he is a youth of rather tender age, an indigent, and he was relying on his mother for assistance in making bond for the two felony convictions, which are not the subject matter of this appeal, pending against him at the time he was arrested on January 31, 1977. It is clear that he never made bond for the prior charges and had spent approximately three weeks in jail immediately prior to his arrest on January 31, 1977. Moreover, at the time, he was an escapee from the Marvell jail, having escaped only a short while before he was apprehended by the Phillips County Sheriff Department.

The record also reflects that appellant was evaluated by the Mental Health Center, presumably of Phillips County. The record fails to designate the location of the Mental Health Center. At the request of court appointed counsel, appellant was recommitted to the Mental Health Center for further evaluation, but the record is silent as to the results of the first and the second examination. These reports were not made a part of the record.

Appellant testified that he requested the officers for permission to see an attorney before making any statements, but this request was denied.

The officers involved have testified that they advised appellant of his rights and specifically told him that he had the right to talk with an attorney in order to seek advice before answering any questions and, moreover, it is stated, that appellant was told that his attorney could be present during the questioning. The difficulty that I have in accepting this version, at face value, is the fact that the officers knew from the very beginning that appellant had an attorney who was representing appellant. Thus, to assert that appellant's attorney was not called because appellant never requested to see an attorney, in view of all of the circumstances just enumerated, creates, indeed, a cloud on the State's case, in seeking to uphold the confession, is something more than a bare suspicion when it is apparent that the officers could have called appellant's attorney or afforded appellant an opportunity to call his mother or his attorney.

In *Griffith* v. *Rhay*, 282 F. 2d 711, cert. den. 364 U.S. 941, the Court held that where a 19 year old defendant, having little formal education, was interrogated in the hospital while under medication after surgery had been deprived of his constitutional rights regardless of his failure to request the assistance of counsel.

In *Scott* v. *State*, 251 Ark. 918, 475 S.W. 2d 699 (1972), we emphasized that in-custody confessions are presumed to have been involuntary and the State has the burden of proof to establish the voluntariness of the confession.

Since appellant had a right to assistance of counsel during his midnight interrogation by Chief Deputy Sheriff Kenneth Winfrey, Deputy Sheriff Lewis Fielder, and Deputy Sheriff Mayo Powell, his failure to request assistance of counsel is significant only if it amounted to a waiver of that right. But a waiver is an intentional relinquishment or abandonment of a known right or privilege. A waiver cannot be effective unless it is intelligently and competently made. Moreover, courts indulge every presumption against the waiver of fundamental constitutional rights. *Johnson* v. *Zerbst,* 304 U.S. 458; 58 S. Ct. 1019. Appellant testified that he signed the waiver of rights form, but "I didn't read it." The additional fact that the written confession was never signed by the appellant is another significant factor indicating that the State has fallen short of its duty in proving that appellant's confession was voluntary and that he intelligently and understandingly waived his right to counsel.

I would reverse.

I am authorized to state that HOLT, J., joins in this dissent.